John DOE 1, John Doe 2, John Doe 3 and
Charles Linneman, Plaintiffs,

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant,†

ABC INSURANCE COMPANY and
Alias Insurance Company #1, Defendants,

v.

COMMERCIAL UNION INSURANCE COMPANY
n/k/a Onebeacon Insurance Company,
Intervening-Defendant-Respondent.

No. 2009AP2266

Jane DOE 1, Plaintiff,

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant,†

DIOCESE OF SIOUX FALLS, S.D.,
Defendant,

v.

COMMERCIAL UNION INSURANCE COMPANY
n/k/a Onebeacon Insurance Company,
Intervening-Defendant-Respondent.

No. 2009AP2677

Donald MARSHALL, Plaintiff,

† Petition for Review Filed.

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant,†

COMMERCIAL UNION INSURANCE COMPANY,
n/k/a OneBeacon Insurance Company,
Intervenor-Defendant-Respondent.

No. 2009AP2774
James ESSENBERG, Plaintiff,

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant,†

COMMERCIAL UNION INSURANCE COMPANY,
n/k/a OneBeacon Insurance Company,
Intervening Defendant-Respondent.

No. 2009AP2776
Peter NEELS and David Neels, Plaintiffs,

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant,†

COMMERCIAL UNION INSURANCE COMPANY,
n/k/a OneBeacon Insurance Company,
Intervening Defendant-Respondent.

No. 2009AP2785
Dean WEISSMULLER,
Plaintiff,

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant,†

† Petition for Review Filed.

COMMERCIAL UNION INSURANCE COMPANY, n/k/a OneBeacon Insurance Company, Intervening Defendant-Respondent,

ST. JOHN'S SCHOOL FOR THE DEAF, Defendant.

No 2009AP2807
JOHN DOE 6, Plaintiff,

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant,†

COMMERCIAL UNION INSURANCE COMPANY, n/k/a OneBeacon Insurance Company, Intervening-Defendant-Respondent.

No. 2009AP2887
John DOE 14, Plaintiff,

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant,†

COMMERCIAL UNION INSURANCE COMPANY, n/k/a OneBeacon Insurance Company, Defendant-Respondent.

No. 2009AP2915
John DOE 13, Plaintiff,

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant,†

COMMERCIAL UNION INSURANCE COMPANY, a/k/a OneBeacon Insurance Company, Intervening Defendant-Respondent.

† Petition for Review Filed.

No. 209AP2969
Donald BUTCHER, Plaintiff,

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant†,

COMMERCIAL UNION INSURANCE COMPANY,
n/k/a OneBeacon Insurance Company,
Intervening Defendant-Respondent.

No. 2009AP2970
Jane DOE 2 and Jane Doe 3, Plaintiffs,

v.

ARCHDIOCESE OF MILWAUKEE, Defendant-Appellant,†

COMMERCIAL UNION INSURANCE COMPANY,
n/k/a OneBeacon Insurance Company,
Intervening Defendant-Respondent,

DIOCESE OF SIOUX FALLS, Defendant.

Court of Appeals

*Submitted on briefs September 7, 2010.
—Decided November 23, 2010.*

2010 WI App 164

(Also reported in 794 N.W.2d 468.)

† Petition for Review Filed.

670

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John Rothstein, Jeffrey O. Davis, David P. Muth* and *Natalie Maciolek* of *Quarles & Brady LLP* of Milwaukee.

On behalf of the intervening-defendant-respondent, the cause was submitted on the brief of *Mark S. Nelson* and *Sarah A. Ponath* of *Nelson, Connell, Conrad, Tallmadge & Slein, S.C.* of Waukesha.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. At issue in this consolidated appeal is whether commercial general liability insurance coverage exists for the plaintiffs' claims of negligent misrepresentation against the Archdiocese of Milwaukee. The Archdiocese appeals the finding of the trial courts that insurance coverage does not exist under a commercial general liability policy (CGL) issued by OneBeacon Insurance Company[1] because the actions underlying the complaints constitute volitional acts, not accidents that would be covered under the policy. Because we conclude that the allegations in the plaintiffs' complaints are volitional acts rather than accidental occurrences, we affirm.

## BACKGROUND

¶ 2. This is a consolidated appeal involving ten appeals and thirteen underlying lawsuits. The consolidated cases all arise out of allegations of sexual abuse committed by former priests of the Archdiocese of Milwaukee. In their respective complaints, all of the plaintiffs allege causes of action for negligent misrepresentation, stating that the Archdiocese represented that

---

[1] Formerly known as Commercial Union Insurance Co.

671

children were safe in the presence of the priests despite high-ranking personnel having knowledge of the priests' histories of sexual abuse. The complaints are substantively identical, all alleging that agents of the Archdiocese were confronted by former victims of the priests prior to the priests having contact with the plaintiffs; however, the Archdiocese allowed the priests to have continued access to children through parishes and schools, thereby subjecting the plaintiffs to abuse. For purposes of this appeal, the complaints specifically allege that:

> [The] Archdiocese, through its agents ... represented to Plaintiff[s] and [their families] that [the priests at issue] did not have [histories] of molesting children and that [the priests were] not a danger to children.
>
> [The priests] did have [histories] of sexually molesting children and [were] a danger to children.
>
> The Archdiocese did not intend or anticipate that the Plaintiff[s] would be harmed or abused because of its representation.
>
> The Archdiocese owed a duty of due care to Plaintiff[s] because it should have known that [the priests] would have access to children including Plaintiff[s], should have known that [the priests] [were] a danger to children, and should have known that [the priests] had molested children before [they] molested Plaintiff[s], and should have known that parents and children would place the utmost trust in [the priests].
>
> The Archdiocese, through its agents ... failed to use ordinary care in making the representation or in ascertaining the facts related to [the priests]. The Archdiocese reasonably should have foreseen that its representation would subject Plaintiff[s] to the unreasonable risk of harm.
>
> The Archdiocese failed to use ordinary care to determine [the priests'] [histories] of molesting children and

672

whether [the priests] [were] safe for work with children before it made its representation...

[The Archdiocese's failures include but are not limited to]: failure to ask [the priests] whether [they] sexually molested children, failure to ask [the priests'] co-workers whether [the priests] molested children or whether they had any concerns about [the priests] and children ... failure to have a sufficient system to determine whether [the priests] molested children and whether [they were] safe, failure to train its employees properly to identify warning signs of child molestation by fellow employees, and failure to investigate warning signs about [the priests] when they did arise.

¶ 3. The Archdiocese tendered its defense to its insurance carrier, OneBeacon Insurance Company. One-Beacon intervened in each of the actions, seeking a declaration of no coverage. Two trial courts found that the negligent misrepresentation claims, as alleged in the complaints, did not trigger coverage. Both trial courts found that the facts underlying the complaints did not constitute "occurrences" as defined by the policy. Subsequently, the parties stipulated to the same result in the remaining cases, thereby allowing all of the cases to be consolidated and appealed. This appeal follows.

## DISCUSSION

¶ 4. At issue in this appeal is whether OneBeacon has a duty to indemnify the Archdiocese under its CGL policy with regard to the plaintiffs' negligent misrepresentation claims. The policy defines an occurrence as an "accident." The Archdiocese argues that because it did not intend to harm the plaintiffs or intend to induce the plaintiffs into any action, the allegations in the plaintiffs' complaints are within coverage provided under the One-Beacon policy. The Archdiocese further contends that the plaintiffs' allegations are actually allegations of "failures

to act," rather than negligent misrepresentations.[2] We disagree. The question of whether negligent misrepre sentation claims are covered under occurrence-based CGL policies that define occurrences as accidents has been thoroughly discussed by our supreme court in *Everson v. Lorenz*, 2005 WI 51, 280 Wis. 2d 1, 695 N.W.2d 298 and *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, 311 Wis. 2d 492, 753 N.W.2d 448 (hereinafter referred to as *Stuart II*). Our reading of both cases supports the trial courts' finding that the negligent misrepresentation claims against the Arch-diocese are not covered under the OneBeacon policy. Accordingly, we affirm.

## I. *Legal Standard.*

¶ 5. This case primarily involves interpretation of an insurance policy, which is generally subject to *de novo* review. *Welin v. American Family Mut. Ins. Co.*, 2006 WI 81, ¶ 16, 292 Wis. 2d 73, 717 N.W.2d 690. "An insurance policy is not interpreted in a vacuum or based on hypotheticals. It is tested against the factual allegations at issue." *Estate of Sustache v. American Family Mut. Ins. Co.*, 2008 WI 87, ¶ 19, 311 Wis. 2d 548, 751 N.W.2d 845 (citation omitted). " 'These allegations must state or claim a cause of action for the liability insured against or for which indemnity is paid in order for the suit to come within any defense coverage of the policy...' " *Everson*, 280 Wis. 2d 1, ¶ 11 (citation omitted). OneBeacon filed

---

[2] The Archdiocese also asks us to frame this coverage issue as arising in the context of a duty to defend. We decline to do so, as this matter is really about coverage rather than a duty to defend. OneBeacon was providing a defense for the Archdiocese in some of the underlying actions. Therefore, this case is not at a duty to defend posture. *See Estate of Sustache v. American Family Mut. Ins. Co.*, 2008 WI 87, ¶ 28, 311 Wis. 2d 548, 751 N.W.2d 845.

motions for declaratory/summary judgment requesting that the respective trial courts find that no coverage exists under its CGL policy with regard to the negligent misrepresentation claims. Prior to the consolidation of this case, two trial courts separately found that no coverage existed. Whether reviewing a declaratory judgment or a summary judgment, this matter presents us with a question of law, which we review *de novo. See Nischke v. Aetna Health Plans,* 2008 WI App 190, ¶ 4, 314 Wis. 2d 774, 763 N.W.2d 554.

## II. *Everson* and *Stuart.*

¶ 6. The CGL policy provided by OneBeacon states, in relevant part:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance policy applies, caused by an occurrence...
>
> ....
>
> [O]ccurrence means an *accident* including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

(Emphasis added.)

¶ 7. OneBeacon contends that the allegations in the plaintiffs' claims do not constitute "occurrences" as they are not accidents. The Wisconsin Supreme Court has defined "accident" as " '[a]n unexpected, undesirable event' or an unforeseen incident' which is characterized by a lack of intention.' " *Smith v. Katz,* 226 Wis. 2d 798, 820–821, 595 N.W.2d 345 (1999) (citation omitted). Re-

675

lying on the Wisconsin Supreme Court's holding in *Everson*, OneBeacon argues that coverage for the alleged negligent misrepresentations does not exist as there was nothing accidental about the misrepresentation, rather, the Archdiocese engaged in volitional acts. We agree.

¶ 8. In *Everson,* the plaintiff purchased land from the defendant after the defendant mistakenly reported in a real estate report that the lot was not located within a 100–year flood plain. *Id.,* 280 Wis. 2d 1, ¶ 5. After the transaction was completed, the plaintiff discovered that the property was located within a 100–year flood plain, making construction of a home on that property impossible. *Id.* At the time of the purchase, the defendant had an occurrence-based CGL policy which defined occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See id.,* ¶ 12. The court found that although the misrepresentation in the report was a typographical error, it did not fit the definition of "accident," which the court recognized as " '[a]n unintended and unforeseen injurious occurrence ... that does not occur in the usual course of events or that could not be reasonably anticipated.' " *Id.,* ¶ 15 (citation omitted; brackets in *Everson*). Rather, the court determined that for the defendant to be held liable, he "must have asserted a false statement, and such an assertion require[d] a degree of volition inconsistent with the term accident." *See id.,* ¶¶ 16–19. The court found the defendant's misrepresentation to be volitional, and further held "where there is a volitional act involved in such a misrepresentation, that act removes it from coverage as an 'occurrence' under the liability insurance policy." *Id.,* ¶ 20.

¶ 9. The Wisconsin Supreme Court elaborated on volitional acts for the purpose of determining whether negligent misrepresentation claims fell within the realm of CGL coverage in *Stuart II.* In *Stuart II,* the insured

building contractor performed substantial work on a home, however the homeowner later discovered numerous significant defects in the work. *Id.*, 311 Wis. 2d 492, ¶¶ 6–7. The homeowner sued the contractor, alleging the contractor violated the deceptive practices regulation under WIS. ADMIN. CODE ATCP § 110.02 by making "false, deceptive or misleading representation[s] in order to induce any person to enter into a home improvement contract." *Stuart II*, 311 Wis. 2d 492, ¶ 7 n.7. The contractor sought coverage under his insurance company's standard CGL policy. After determining that the policy defined "occurrence" as "accident," the court went on to define accident as "an event or condition occurring by chance or one that arises from unknown causes, and is unforeseen and unintended." *See id.*, ¶ 24. Relying on its holding in *Everson*, the court concluded that while a *result* may be unexpected, the *causal event* must be accidental for an event to be construed as an accidental occurrence. *Stuart II*, 311 Wis. 2d 492, ¶ 40. Therefore, the defendants' intent to induce the homeowners at the time they engaged in misrepresentations precluded coverage because it was volitional rather than accidental. *Id.*, ¶¶ 32, 45. The defendants' ability to foresee the results of their actions was not relevant to the question of coverage. *Id.*, ¶ 40.

## III. Application of *Everson* and *Stuart II* to the Archdiocese's arguments.

██

¶ 10. Applying the holdings of both *Everson* and *Stuart II*, we conclude that the trial courts were correct in finding that the Archdiocese's representations constituted volitional acts that are not subject to coverage under the OneBeacon policy. The Archdiocese argues that the application of the *Everson* holdings should be

limited because *Everson* dealt with property damage and applying the *Everson* holdings to all negligent misrepresentation cases would essentially always preclude coverage. We disagree. Our supreme court's holdings in *Everson* were not limited to analyzing negligent misrepresentation claims in the context of resulting property damage; rather, the court was clear that the proper inquiry in determining whether allegations of negligent misrepresentation constitute occurrences under CGL policies does not focus on the injury itself, but rather on the underlying cause of the injury. *Id.*, ¶ 21. Therefore, the focus for purposes of this appeal is not the ultimate injury the plaintiffs suffered, but rather the underlying acts of the Archdioceses that led to the plaintiffs' injuries.[3] The complaints allege that agents of the Archdiocese were aware of the sexual abuse histories of the clergy at issue but still kept the clergy in academic environments knowing they would continue to have contact with children. The plaintiffs did come into contact with the accused clergy and subsequently allege that they were victims of molestation. The underlying act that led to the plaintiffs' injury, therefore, is the misrepresentation that the plaintiffs would be safe in the presence of the priests. The proper focus for determining coverage, then, is on the misrepresentation leading to the molestation.

---

[3] The Archdiocese also argues that the *Everson v. Lorenz*, 2005 WI 51, 280 Wis. 2d 1, 695 N.W.2d 298, holdings are contrary to a series of prior Wisconsin cases dealing with insurance coverage for negligent misrepresentation claims; however, we are bound by the rulings of our supreme court. While it may appear that such rulings are inconsistent, we are to follow the most recent holding. (*See State v. Leutenegger*, 2004 WI App 127, ¶ 5, 275 Wis. 2d 512, 685 N.W.2d 536, citing *Jones v. Dane County*, 195 Wis. 2d 892, 918 n.8, 537 N.W.2d 74 (Ct. App. 1995).).

■

¶ 11. The Archdiocese also argues that because the complaints acknowledge that the Archdiocese did not intend or anticipate that the plaintiffs would be harmed, coverage for the acts alleged in the complaints exists. The Archdiocese contends that *Stuart II* can be construed in two possible ways, with both possible interpretations requiring a finding of coverage. The first interpretation put forth by the Archdiocese is that misrepresentation claims are precluded as covered accidents only if they are intended to deceive or cause harm. Since the injury to the plaintiffs was not intended from the standpoint of the Archdiocese, *Stuart II* can be read to allow coverage. The second interpretation the Archdiocese puts forth is that *Stuart II* requires an "intent to induce" on the part of the Archdiocese before coverage is barred. Because the Archdiocese did not intend to harm the plaintiffs or intend to induce the plaintiffs into any sort of action, the Archdiocese asserts, coverage should not be barred. We disagree.[4]

■

¶ 12. Both of the Archdiocese's arguments put forth a proposition that *Stuart II* expressly rejected—the notion that if an unintended *result* is accidental from the standpoint of the insured, it is covered under a CGL policy that defines "occurrence" as "accident." Though the Archdiocese may not have anticipated harm to befall the plaintiffs, *Stuart II* is clear that the focus in determining whether events are accidental for insurance purposes is

---

[4] The Archdiocese also argues that the split in reasoning among the justices in *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, 311 Wis. 2d 492, 753 N.W.2d 448, shows that the coverage issue is at least "fairly debatable," making coverage available. That the Wisconsin Supreme Court justices were split on the issue presented in *Stuart II*, does not undermine its ultimate holding that the proper test is whether an act was volitional.

not on whether a specific *result* was accidental, but rather "what matters is whether the *cause* of the damage was accidental." *Stuart II*, 311 Wis. 2d 492, ¶ 40 (emphasis added). Therefore, "to determine whether an act is accidental within the meaning of [this CGL policy], we need only determine whether the occurrence giving rise to the claims was an unintentional act in the sense that it was not volitional." *Id.*, ¶ 37. The cause of the plaintiffs' injuries, the misrepresentation by the Archdiocese, cannot be characterized as accidental. The affirmative representation of safety by the Archdiocese did not occur by chance, nor was it unforeseen or unintended, as *Stuart II* would require. *See id.*, ¶ 24. Rather, the misrepresentation of safety, like the misrepresentation in *Everson*, constitutes an "act of making a false or misleading statement about something." *Everson*, 280 Wis. 2d 1, ¶ 19. The Archdiocese's awareness of its priests' histories of molestation and its non-disclosure to the plaintiffs "may [have been] prompted by negligence, [but] it is nevertheless devoid of any suggestion of accident." *Id.*

¶ 13. Further, the Archdiocese's misrepresentation was clearly volitional. Despite the plaintiffs' assertion that the Archdiocese was not aware that the plaintiffs would incur injuries as a result of its misrepresentation, we have already established that the proper inquiry is not as to the injury itself, but rather to the underlying cause of the injury. The court in *Everson* found that while the defendant made a mistake in judgment, he later acted in volition in that he intended to give the plaintiff information as to whether the property was on a flood plain. *Everson*, 280 Wis. 2d 1, ¶ 22. Similarly, while the Archdiocese may not have intended to harm the plaintiffs, it certainly intended to keep its knowledge of the priests at issue to itself, ultimately leading to the

plaintiffs' injuries. The degree of volition involved in this instance goes beyond that of a typographical error, as was the case in *Everson*. The underlying cause of the plaintiffs' injuries, the Archdiocese's misrepresentation, constitutes an act of volition.

## IV. Failure to Act.

¶ 14. Finally, the Archdiocese attempts to categorize the allegations in the complaint as "failures to act" as opposed to volitional acts, thereby allowing coverage. We disagree. For the purposes of determining whether the allegations in the complaint allow for coverage, the relevant question is not whether the Archdiocese's actions or inactions constitute failures to act, but rather, whether its actions constitute accidents so as to fall within the realm of covered occurrences. We have already established that the Archdiocese's actions were volitional acts, not accidents. A "failure to act" analysis is therefore unnecessary.

## CONCLUSION

¶ 15. For all the foregoing reasons, we conclude that the trial courts were correct in their findings that coverage for the negligent misrepresentation claims does not exist. Because the representations made by the Archdiocese constitute "volitional acts," they cannot be considered "occurrences" within the meaning of the CGL policy. Accordingly, we affirm.

*By the Court.*—Judgments affirmed.