COURT OF APPEALS
DECISION
DATED AND FILED

April 9, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1306**

Cir. Ct. No. **2020CV1986**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

NAJJAR ABDULLAH,

PLAINTIFF,

THE CITY OF MILWAUKEE MEDICAL PLAN,

INVOLUNTARY-PLAINTIFF,

WEST BEND MUTUAL INSURANCE COMPANY,

INTERVENOR-RESPONDENT,

V.

INSPIRE BRANDS, INC.,

DEFENDANT,

MERESS & ASSOCIATES LLC,

DEFENDANT-APPELLANT.

---

APPEAL from orders of the circuit court for Milwaukee County: PAUL R. VAN GRUNSVEN, Judge. *Affirmed*.

Before White, C.J., Geenen and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Meress & Associates LLC ("Meress") appeals orders of the circuit court denying its motion for summary judgment, granting the cross-motion for summary judgment of West Bend Mutual Insurance Company ("West Bend"), and entering judgment in West Bend's favor. Meress argues that the circuit court erred when it concluded that West Bend had no duty to defend Meress under the insurance policy issued by West Bend to Meress (the "Policy"). We reject Meress's arguments and affirm.

## BACKGROUND

¶2     On September 7, 2018, Najjar Abdullah and his fifteen-year-old daughter went to Buffalo Wild Wings in Glendale, Wisconsin, after a high school football game. When he and his daughter entered, Grant Nelson, a security guard employed by Meress and acting within the scope of his employment at the restaurant, angrily stated that patrons needed to be twenty-one years of age to enter. Abdullah's daughter left, and Abdullah told Nelson that he wanted to place a to-go order. Abdullah began talking with a manager, Justin Weber, at the front desk, when Nelson intervened by pushing Abdullah in the chest and telling him to step out of the restaurant. When Abdullah tried to tell Nelson that he was only speaking with Weber, Nelson again pushed Abdullah before pepper spraying Abdullah in the face. Nelson called the police to the restaurant and falsely told them that Abdullah had

been disorderly. As a result, Abdullah was arrested, handcuffed, driven to the police station in a squad car, booked, and cited for disorderly conduct. The City of Glendale Municipal Court dismissed the citation on January 20, 2020. At all times relevant to this lawsuit, Nelson did not have a license or permit to act as a security guard, as required by Wisconsin law.

¶3    On March 11, 2020, Abdullah filed the instant case alleging, among other claims, that Meress negligently hired and supervised Nelson because Nelson lacked a license or permit to act as a security guard when he assaulted Abdullah. On March 21, 2020, West Bend sent a letter to Meress denying it had a duty to defend or indemnify Meress in Abdullah's lawsuit.

¶4    Abdullah's case was removed to the United States District Court for the Eastern District of Wisconsin, and West Bend intervened seeking a declaratory judgment that it had no duty to defend or indemnify Meress under the Policy in effect at the time of the events giving rise to the lawsuit. Abdullah settled his claims against Inspire Brands, Inc., the owner/franchisor of Buffalo Wild Wings, and Meress, and the federal court remanded the case back to Milwaukee County Circuit Court.

¶5    Meress and West Bend filed cross-motions for summary judgment asking to the circuit court to decide whether West Bend owed duties of defense and indemnification to Meress. The circuit court granted West Bend's motion and

3

denied Meress's motion, concluding that West Bend did not owe duties of defense or indemnification to Meress.[1]

¶6      Meress appeals.

## DISCUSSION

¶7      Meress argues that several provisions of the Policy provide an initial grant of coverage for the claims alleged in Abdullah's complaint, and no exclusions apply that would preclude coverage. Pointing specifically to the allegation that it was negligent in unlawfully hiring Nelson as an unlicensed security guard, Meress says that West Bend's duty to defend has been triggered.

¶8      The duty to defend is related to but distinct from the duty to indemnify. Unlike the duty to indemnify, the duty to defend "is based upon the nature of the claim and not on the merits of the claim." *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶21, 261 Wis. 2d 4, 660 N.W.2d 666. It arises when the complaint alleges facts that, if proven, would constitute a covered claim under the policy. *Choinsky v. Employers Ins. Co. of Wausau*, 2020 WI 13, ¶16, 390 Wis. 2d 209, 938 N.W.2d 548. Thus, "[t]he duty to defend is necessarily broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage." *Fireman's Fund*, 261 Wis. 2d 4, ¶20.

¶9      To determine whether allegations in a complaint trigger an insurer's duty to defend the insured, we compare the allegations within the "four corners" of

---

[1] Although the circuit court appeared to use the term "coverage" interchangeably while analyzing the duties to defend and indemnify while ruling on the cross-motions for summary judgment, this is largely because that is how the issues were presented in the briefs. In any event, it is clear from the circuit court's written decision that it applied the correct standard of law and only applied the Policy and Wisconsin law to the allegations in the Abdullah complaint when concluding that West Bend owed no duties to Meress.

the complaint to the plain and ordinary meaning of the language of the entire insurance policy, including exclusions if an initial grant of coverage is shown. *Water Well Sols. Servs. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶¶19, 31, 369 Wis. 2d 607, 881 N.W.2d 285; *Bank One v. Breakers Dev., Inc.*, 208 Wis. 2d 230, 233, 559 N.W.2d 911 (Ct. App. 1997). We accept the allegations as true, draw all reasonable inferences from them, and resolve any doubt as to coverage in favor of the insured. *Fireman's Fund*, 261 Wis. 2d 4, ¶¶19-20.

¶10 We review orders granting summary judgment, interpret insurance policies, and determine whether the duty to defend was triggered independently and without deference to the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987) (explaining that orders granting summary judgment are reviewed de novo); *Employers Mut. Cas. Co. v. Horace Mann Ins. Co.*, 2005 WI App 237, ¶5, 287 Wis. 2d 418, 707 N.W.2d 280 (indicating that the interpretation of insurance policies is subject to de novo review); *Choinsky*, 390 Wis. 2d 209, ¶13 (explaining that the existence of duty to defend is a question of law reviewed de novo).

### I. West Bend has no duty to defend Meress under Coverage A.

¶11 Meress argues that Coverage A of the Policy provides coverage in the instant case triggering West Bend's duty to defend. Coverage A provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury[,]'" but only if the bodily injury is caused by an "occurrence." As it did in the circuit court, Meress relies primarily on non-binding, non-Wisconsin cases to support its argument that the allegations involving its unlawful hiring of Nelson as an unlicensed security guard constitutes an "occurrence." The circuit court, following *Talley v. Mustafa*, 2018 WI 47, 381

Wis. 2d 393, 911 N.W.2d 55, disagreed, and concluded that there was no "occurrence" as defined by the Policy and Wisconsin law. We agree with the circuit court that *Talley* controls this issue and that coverage was not triggered because there was no "occurrence."

¶12 The Policy defines the term "occurrence" as "an accident[.]" "Accident" is not defined in the Policy, but Wisconsin courts have defined "accident" to mean an "unexpected, undesirable event' or 'an unforeseen incident' which is characterized by a 'lack of intention.'" *Doyle v. Engelke*, 219 Wis. 2d 277, 289, 580 N.W.2d 245 (1998), *overruled on other grounds by Talley*, 381 Wis. 2d 393; *Doe 1 v. Archdiocese of Milwaukee*, 2010 WI App 164, ¶7, 330 Wis. 2d 666, 794 N.W.2d 468. Here, both parties agree that Nelson's alleged actions (i.e., pushing and pepper spraying Abdullah, calling the police, and falsely claiming that Abdullah was being disorderly) were intentional and not accidental.

¶13 Instead, the issue is whether the complaint contains allegations that Meress acted negligently in a specific way that led Nelson to commit his intentional injury-causing acts. This issue was squarely addressed in *Talley*. In *Talley*, a security guard at a convenience store punched a customer in the face twice. The customer sued the security guard, the security guard's employer, and the employer's liability insurer. *Id.*, 381 Wis. 2d 393, ¶¶4-5. Among other claims, the customer alleged that the employer was negligent in failing "to properly train and supervise their employees[.]" *Id.*, ¶5. The insurer defended the employer under a reservation of rights but moved to bifurcate the issues of coverage and liability. *Id.*, ¶6.

¶14 Like the Policy in this case, coverage in the *Talley* policy was only triggered by an "'occurrence,' which is defined as an accident." *Id.*, ¶16. Ultimately, the *Talley* court agreed with the insurer that there was no "occurrence"

triggering coverage. It explained that the focus of the inquiry was on the "injury-causing event," i.e., the punching, and in order to constitute an "occurrence," there must be a separate, independent act by the employer that accidentally caused the injury-causing event. *Id.*, ¶29. It reasoned:

> [Customer's] allegations asserting negligent supervision are entirely dependent upon the intentional act giving rise to the injury—the punching. The factual allegations say the punching caused [Customer's] injury. It is the only injury-causing event. There are no factual allegations that [Employer] knew or should have known that [Security Guard/Employee] was likely to punch customers in the face. There are no facts alleging that [Employer] acted in a specific way that led [Security Guard/Employee] to commit the act causing the injury. Because [Customer] does not present any separate basis for [Employer's] negligence—any independent act by [Employer] that accidentally caused [Customer's] injury—no coverage exists.

*Id.*, ¶29.

¶15    The *Talley* court cited *QBE Ins. Corp. v. M & S Landis Corp.*, 915 A. 2d 1222 (Pa. Super. 2007) as an example of a negligent supervision claim that constituted an "occurrence" that triggered insurance coverage. *Talley*, 381 Wis. 2d 393, ¶30. In *QBE*, the court held the insurer had a duty to defend its insured—a nightclub—on the plaintiff's claim that the employer was negligent in failing to properly train its bouncer employees on how to safely evict unruly patrons from the club and how to render first aid. *Id.*, 915 A. 2d 1222, ¶¶11-15. After removing a patron from the nightclub, the bouncers threw the man on the ground, pinned him face down, and laid on top of him for so long that the man suffocated. *Id.*, ¶11. The *QBE* court identified factual allegations in the complaint of negligence against the nightclub, separate from the bouncers' intentional acts, sufficient to conclude that the negligence claims "[could] be considered an 'accident' triggering an occurrence

7

under [the] policy." *Id.*, ¶12. Specifically, the ***QBE*** court highlighted the allegations that the nightclub failed to properly teach the bouncers how to eject patrons, use the correct amount of restraint, and render first aid. *Id.*, ¶¶11-12. "That is, had the employer in ***QBE*** taught its bouncers how to safely restrain and remove a patron and how to render first aid, the man in ***QBE*** may not have been injured." ***Talley***, 381 Wis. 2d 393, ¶30.

¶16     Meress argues that the Abdullah complaint contains specific allegations of separate acts from Meress that trigger an "occurrence" under the Policy; namely, that Meress failed to properly credential Nelson, who did not have a license to operate as an armed security guard, before hiring him. However, as West Bend correctly points out, the alleged separate acts need to bear some relation to the injury-causing event. The allegation that Meress failed to properly credential Nelson falls short of the specific separate acts contemplated by ***Talley*** and present in ***QBE***. Here, there was no indication that Meress knew or should have known that Nelson was likely to pepper spray a patron or that it acted in a particular way that caused Nelson to pepper spray Abdullah. *See **Talley***, 381 Wis. 2d 393, ¶29 (suggesting that the employer would need to have known or should have known that the employee was likely to punch a customer, or that the employer acted in a particular way that would have caused the employee to punch a customer).

¶17     Accordingly, we conclude that West Bend has no duty to defend Meress under Coverage A.

8

## II.     West Bend has no duty to defend Meress under Coverage B.

¶18     Meress next argues that West Bend's duty to defend is triggered under Coverage B, which provides that West Bend "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." "'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses" including "[f]alse arrest, detention or imprisonment" and "[m]alicious prosecution[.]"   Meress highlights Paragraph 12 of the Abdullah complaint to support an initial grant of coverage, which states:

> Nelson called the police and falsely told them that Abdullah had been disorderly.  Weber ratified Nelson's false statements.  As a result of their false statements, Abdullah was arrested, handcuffed, put in the back of a squad car, driven to the police station, photographed, fingerprinted, and issued a citation for disorderly conduct.  The City of Glendale Municipal Court dismissed the citation on January 20, 2020.

¶19     These allegations are insufficiently detailed to trigger coverage; even construed liberally, these allegations do not amount to an allegation that Meress had a legal obligation to pay for injury caused by false arrest, detention, imprisonment, or malicious prosecution.  Several necessary elements of these claims are absent from the complaint as are many critical details about the circumstances under which the citation was dismissed (e.g., whether it was dismissed with or without prejudice).[2]  Moreover, any damages for injury that Meress could conceivably be

---

[2] For comprehensive discussions of claims for false arrest or imprisonment and malicious prosecution, see the following:  *Monroe v. Chase*, 2021 WI 66, 397 Wis. 2d 805, 961 N.W.2d 50 (discussing malicious prosecution); *Herbst v. Wuennenberg*, 83 Wis. 2d 768, 266 N.W.2d 391 (1978) (regarding false imprisonment); *Maniaci v. Marquette Univ.*, 50 Wis. 2d 287, 184 N.W.2d 168 (1971) (discussing false arrest or imprisonment, malicious prosecution, abuse of process).

"legally obligated to pay" would arise out of the negligent hiring of Nelson, not Nelson's false statements to the police.

¶20    Accordingly, we conclude West Bend has no duty to defend Meress under Coverage B.

### III.    West Bend has no duty to defend Meress under the "Limitation of Coverage Designated Premises or Project" endorsement.

¶21    Meress argues that the Limitation of Coverage Designated Premises or Project endorsement ("Designated Project Limitation") substituted for the coverage provided in Coverages A and B, such that the Designated Project Limitation creates new coverage that should not be predicated on an "occurrence." Endorsements substitute to and prevail over the main body of a policy so long as the endorsement "expressly states" the intent to do so. *Romero v. West Bend Mut. Ins. Co.*, 2016 WI App 59, ¶19, 371 Wis. 2d 478, 885 N.W.2d 591.

¶22    The Designated Project Limitation states, in relevant part, that it "modifies" insurance provided in the Policy.  It designates "Detective Agency Operations" as the "Project" for purposes of the endorsement and states: "This insurance applies only to 'bodily injury', 'property damage', 'personal and advertising injury' and medical expenses arising out of ... [t]he project[.]"

¶23    Meress says that the Designated Project Limitation's intention to substitute for (rather than modify) Coverages A and B is clear, because West Bend did not include a provision that states the insurer has "[n]o other obligation or liability to pay sums or perform acts or services … unless explicitly provided for under Supplementary Payments—Coverages A and B," which was included in the "Detective/Security Guard Professional Liability Coverage" ("Professional Liability") endorsement.

¶24    We disagree with Meress.  By its plain language, the Designated Project Limitation is a limitation on Coverages A and B, not a substitute for them.  In particular, it adds the additional requirement to Coverages A and B that the injury "arise out of" the designated project, i.e., Detective Agency Operations.  The language in the Professional Liability Coverage endorsement highlighted by Meress acts as a way of limiting additional obligations to pay if coverage under that endorsement is triggered.  That is, if coverage under the Professional Liability Coverage endorsement is triggered, West Bend will have no other obligation to pay sums to Meress except as explicitly provided in the Supplementary Payments— Coverages A and B section of the Policy.  The absence of this language does not transform the Designated Project Limitation into an endorsement that creates or substitutes rather than limits coverage.

¶25    Accordingly, West Bend has no duty to defend Meress under the Designated Project Limitation.

**IV.    West Bend has no duty to defend Meress under the Professional Liability Coverage endorsement.**

¶26    Finally, Meress argues that it is owed a duty of defense under the Professional Liability Coverage endorsement.  The endorsement says that it is being "added" to the Policy, and it reads, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error, or omission of the insured arising out of the insured's professional detective or security guard operations.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> …

11

> No other obligation or liability to pay sums or
> perform acts or services is covered unless explicitly provided
> for under Supplementary Payments—Coverages A and B.

Meress argues that the Abdullah complaint triggers an initial grant of coverage under this Professional Liability Coverage endorsement, and West Bend does not appear to disagree.

¶27 However, West Bend argues, and the circuit court concluded, that an exclusion applied, namely, an exclusion for "[l]iability arising from any fraudulent, dishonest or criminal act of any insured." The Abdullah complaint alleges that Nelson is an employee of Meress, and that Nelson did not have a license to operate as a security guard when Meress hired him for that position. These allegations, if proven, amount to a violation of WIS. STAT. § 440.26(8) (2021-22).[3] This section makes it a crime punishable by fine and/or imprisonment to employ anyone as a "private security person" without having procured the license or permit under that section. Meress argues that violation of § 440.26(8) cannot be a crime because it is not located in the criminal code, but WIS. STAT. § 939.12 defines a "crime" as "conduct which is prohibited by state law and punishable by fine or imprisonment or both." Violation of § 440.26(8), therefore, is a crime.

¶28 Taking the allegations in the Abdullah complaint as true, Meress hired Nelson to perform services as a security person without obtaining a license or permit under WIS. STAT. § 440.26 in violation of § 440.26(8). This constitutes "[l]iability arising from any ... criminal act of any insured[,]" and accordingly, West Bend has no duty to defend Meress under the Professional Liability Coverage endorsement.

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

12

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.