JAMES CAPE & SONS COMPANY, by its receiver
Michael S. Polsky, Plaintiff,

v.

STREU CONSTRUCTION CO.,
p/k/a PCC Construction Co.,
Vinton Construction Co., John Streu,
Ernest J. Streu, James J. Maples, Michael J.
Maples and Daniel Beaudoin,
Defendants-Respondents,†

ZURICH AMERICAN INSURANCE COMPANY,
Valiant Insurance Company and
Northern Insurance Company of New York,
Intervening Defendants-Appellants,

RLI INSURANCE COMPANY, Intervening Defendant.

Court of Appeals

*No. 2008AP2872. Submitted on briefs June 25, 2009.
—Decided September 9, 2009.*

2009 WI App 154

(Also reported in 775 N.W.2d 117.)

† Petition to review filed.

On behalf of the intervening defendants-appellants, the cause was submitted on the briefs of *Craig W. Nelson* of *Nelson, Connell, Conrad, Tallmadge & Slein, S.C.*, Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Michael B. Apfeld* of *Godfrey & Kahn, S.C.*, Milwaukee.

Before Brown, C.J., Snyder and Kessler, JJ.

¶ 1. SNYDER, J. Zurich American Insurance Company, Valiant Insurance Company, and Northern Insurance Company of New York (together, Zurich) appeal from a declaratory judgment, which concluded that they had a duty to defend Streu Construction Company and Vinton Construction Company, with regard to allegations of negligence against them. James Cape & Sons sued Streu, Vinton and five individuals for damages arising from a criminal construction bid-fixing conspiracy. The insurers rejected the defendants' tender of the defense in this lawsuit. The circuit court held that the insurers had breached their duty to defend and entered a declaratory judgment in favor of coverage on the rationale that the Cape complaint had alleged four claims of negligence against the corporate insureds.[1]

¶ 2. The circuit court followed its declaratory judgment with judgments for damages against the insurers; specifically, the circuit court ordered Zurich to pay $893,363.03 to Vinton Company and ordered Zur-

---

[1] The individual defendants conceded that the insurers had no duty to defend them. Throughout this opinion, we will refer collectively to all defendants as Streu and to all insurers as Zurich unless it is necessary to refer to a specific party.

ich, Valiant, and Northern to pay $256,625.72 to Streu Company for damages incurred as a result of the insurers' breach of their duty to defend.

██

¶ 3.   Zurich contends that Cape's complaint seeks damages based on intentional criminal acts of the insureds rather than negligence and that it has no duty to defend based upon the complaint's allegations. Although an insurer that declines to defend does so at its peril, it is not liable to its insured unless there is, in fact, coverage under the policy or coverage is determined to be fairly debatable. *Radke v. Fireman's Fund Ins. Co.*, 217 Wis. 2d 39, 44, 577 N.W.2d 366 (Ct. App. 1998).

██

¶ 4.   We conclude that Cape's complaint alleges only intentional criminal acts on the part of the insureds and that those acts do not trigger a duty to defend under the insurance policies. Accordingly, we reverse the judgments.

██

¶ 5.   The granting or denying of declaratory relief is a matter within the discretion of the circuit court and is upheld absent an erroneous exercise of discretion. *See Jones v. Secura Ins. Co.*, 2002 WI 11, ¶ 19, 249 Wis. 2d 623, 638 N.W.2d 575. However, when the appropriateness of granting or denying declaratory relief depends on a question of law, our review is de novo. *Gulmire v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 18, ¶ 10, 269 Wis. 2d 501, 674 N.W.2d 629 (WI App 2003). The factual allegations in the complaint are complex but undisputed. Therefore, this case requires us to interpret an insurance contract to determine the scope of an insurer's duty to defend its insureds, which presents a question of law for our de novo review. *See id.*

¶ 6. The two corporate defendants were competitors of Cape in the construction industry. The five individual defendants were associated with the corporations as follows: Daniel Beaudoin was a Cape employee, John and Ernest Streu were principals and officers of Streu Construction, and James and Michael Maples were principals and officers of Vinton Construction.

¶ 7. Cape's complaint alleges that at sometime before 1999 and continuing through January 2004, the defendants "agreed to submit rigged or noncompetitive bids for street, highway, and airport construction projects." The defendants would "meet in person ... to allocate upcoming construction projects amongst themselves and to arrange for each other to submit complementary bids for or refrain from bidding on particular projects." Beaudoin, Ernest and John Streu, and James and Michael Maples each pled guilty to one count of violating 15 U.S.C. § 1, known as the Sherman Antitrust Act, which states in relevant part: "Every contract ... or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony ...." All five individual defendants entered guilty pleas admitting intentional conduct. Each corporate defendant also entered into an agreement pleading guilty to one count of violating 15 U.S.C. § 1.

¶ 8. Cape's amended complaint contains sixteen causes of action.[2] The circuit court held that four of them triggered Zurich's duty to defend the two corpo-

___

[2] Cape's causes of action against all or specific defendants are: violation of the Wisconsin Uniform Trade Secrets Act, unjust enrichment, tortious interference with prospective contracts, injury to business contrary to Wis. Stat. § 134.01

609

rate defendants. Two of these causes of action allege negligent supervision by Streu and Vinton because they failed to properly supervise their corporate officers and to protect Cape from the wrongful acts of the co-conspirators. The other two causes allege negligent retention by Streu and Vinton because they retained employees who were unfit.

■■■■

¶ 9.   The relevant standard applicable to the duty to defend is summarized in *Estate of Sustache v. American Family Mut. Ins. Co.*, 2008 WI 87, ¶ 20, 311 Wis. 2d 548, 751 N.W.2d 845 as follows:

> An insurer's duty to defend its insured is determined by comparing the allegations of the complaint to the terms of the insurance policy. The duty to defend is triggered by the allegations contained within the four corners of the complaint. It is the *nature* of the alleged claim that is controlling, even though the suit may be groundless, false, or fraudulent. The insurer's duty to defend is therefore broader than its duty to indemnify insofar as the former implicates arguable, as opposed to actual, coverage. (Citations omitted.)

"In determining whether there is a duty to defend, the court first considers whether the insuring agreement makes an initial grant of coverage—i.e., whether the insurer has a duty to indemnify its insured—for the

---

(2007–08), intentional misrepresentation, conspiracy to commit fraud, negligent supervision (against both Streu Company and Vinton Company), negligent retention (against both Streu Company and Vinton Company), respondeat superior (against both Streu Company and Vinton Company), breach of duty of loyalty (against Beaudoin), conspiracy to breach the common-law duty of loyalty, civil theft, and conversion.

claims asserted." *Id.*, ¶ 22. If we determine that the policy was not intended to cover the claims asserted, the inquiry ends. *Id.*

¶ 10. The following commercial general liability (CGL) policy language applies to all of the policies at issue here:

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

. . . .

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is cause by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period[.]

. . . .

**2. Exclusions**

This insurance does not apply to:

**a.** Expected or intended injury.

611

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

. . . .

### SECTION V—DEFINITIONS

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . . .

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

¶ 11.  The policies define "occurrence" as an accident. While not defined in the policies, an "accident" has been defined as "an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or cause must be accidental." *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 37, 268 Wis. 2d 16, 673 N.W.2d 65 (citing BLACK'S LAW DICTIONARY 15 (7th ed. 1999)).

¶ 12.  Cape's four negligence-based causes of action against Streu derive from supervision and retention of the same individuals convicted of the felonious bid-fixing conspiracy. Essentially, Cape alleges that John and Ernest Streu, along with James and Michael Maples, as principals and officers of the two corporate defendants, were negligent in retaining and in failing to supervise themselves. Each cause of action expressly

incorporates by reference all of the intentional criminal acts engaged in by the Streus, the Maples, and their corporations.

¶ 13. Streu counters that because Cape alleged negligence and because negligence causes accidents, the complaint sets forth causes of action that trigger a duty to defend under the policy. Streu directs us to two Wisconsin cases for support. First, Streu raises *Loveridge v. Chartier*, 161 Wis. 2d 150, 468 N.W.2d 146 (1991), for the proposition that coverage exists when the criminal actor did not intend the particular harm done to the plaintiff. *Loveridge* offers little guidance. There, Loveridge sued Chartier after she learned that she contracted herpes from a sexual relationship she had with Chartier when she was a minor and Chartier was an adult. *Id.* at 163. It was undisputed that Chartier violated the criminal law by having sexual contact with Loveridge, notwithstanding her consent, because she was a minor at the time of the contact. *Id.* at 167. The court held that the intent to injure did not necessarily follow from a criminal act. *Id.* at 173–74. Here, however, Cape was the victim of the criminal conspiracy, Cape is the claimant in the civil suit, and the damages sought are tied to losses resulting from the criminal conspiracy. Furthermore, it is worth noting that in *Loveridge*, the defendant was never charged or convicted of a criminal offense.

¶ 14. Streu also directs us to *Doyle v. Engelke*, 219 Wis. 2d 277, 580 N.W.2d 245 (1998), for the proposition that coverage exists for corporations whose employees intentionally inflict harm. In *Doyle*, the court held that although there was no coverage for the intentional acts of two employees of Wisconsin Voice of Christian Youth, Inc. (WVCY), the insurer did have a duty to defend the corporation against a negligent supervision claim. *Id.* at 282, 291. At first blush, this seems to resolve the issue

in favor of Streu. However, a closer reading of *Doyle* reveals one critical distinction: the claim against WVCY did not arise from WVCY's intentional conduct. In contrast, Cape's negligence claims arise from criminal conduct by employee *and* employer. Both Streu Company and Vinton Company entered guilty pleas acknowledging (1) a conspiracy, (2) knowing participation in the conspiracy, and (3) actions that substantially affected interstate trade or commerce. In other words, they were in it together.

¶ 15.   It has long been established that insurance policies do not cover intentional acts. The principle of fortuity was adopted by the supreme court in *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 326 N.W.2d 727 (1982). The supreme court explained the principle as follows:

> [Under] the "principle of fortuitousness," [ ] insurance covers fortuitous losses and [ ] losses are not fortuitous if the damage is intentionally caused by the insured. Even where the insurance policy contains no language expressly stating the principle of fortuitousness, courts read this principle into the insurance policy to further specific public policy objectives including (1) avoiding profit from wrongdoing; (2) deterring crime; (3) avoiding fraud against insurers; and (4) maintaining coverage of a scope consistent with the reasonable expectations of the contracting parties on matters as to which no intention or expectation was expressed.

*Id.* at 483–84.

¶ 16.   The duty to defend arises from the allegations within the four corners of the complaint. Our focus is on the facts alleged, the incidents giving rise to the claims, not Cape's theory of liability. *See Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, ¶ 36, 311 Wis. 2d 492, 753 N.W.2d 448. As the *Stuart* court reminded us:

[W]e need not speculate as to what was intended by the company when it issued the policy or by the insured when he acquired it. As pointed out above, the company becomes legally liable to pay only when the insured incurs liability for personal injury or property damage caused by an "occurrence." *An occurrence is defined as an accident. This is what is insured against—not theories of liability.*

*Id.* (citing *Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 480, 329 N.W.2d 150 (1983)).

¶ 17.  All of the amended complaint's one hundred thirty-one allegations supporting Cape's claims describe undisputedly intentional criminal behavior. The complaint fails to present any reasonable view of the facts that would trigger Zurich's duty to defend the insureds under a theory of negligence.

## CONCLUSION

¶ 18.  Cape's complaint alleges that it suffered damages caused by a criminal conspiracy, which is memorialized in the plea agreements and convictions of the insureds. We conclude that the factually unsupported use of the term "negligence" in Cape's complaint, when measured against the extensive factual allegations of intentional criminal conduct, is insufficient to trigger Zurich's duty to defend. We therefore reverse the declaratory judgment. Because there is no duty to defend, we also reverse the judgments awarding damages to Streu Company and Vinton Company for breach of the duty to defend.

*By the Court.*—Judgments reversed.