Marshall Schinner, Plaintiff-Appellant,

v.

Michael Gundrum, Defendant,

West Bend Insurance Company,
Defendant-Respondent.†

Court of Appeals

*No. 2011AP564. Submitted on briefs August 9, 2011.
—Decided February 2, 2012.*

2012 WI App 31

(Also reported in 811 N.W.2d 431.)

† Petition for Review granted 6/13/12.

195

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Keith R. Stachowiak* of *Murphy & Prachthauser, SC.*, Milwaukee, and *Daniel P. Patrykus* of *Keberle & Patrykus, LLP*, West Bend.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jeffrey Leavell* and *Timothy L. Pagel* of *Jeffrey Leavell, S.C.*, Racine.

Before Vergeront, Sherman and Blanchard, JJ.

¶ 1. BLANCHARD, J. Marshall Schinner appeals a summary judgment dismissing West Bend Insurance Company from his suit against West Bend and its insured, Michael Gundrum. Schinner alleges that he sustained serious injuries after being assaulted by an underage guest at a party Gundrum hosted on family business property. Schinner argues that the circuit court erred in concluding that there was no "occurrence" under the Gundrums' homeowner's insurance policy and, separately, that an exclusion pertaining to non-insured locations bars coverage. We agree with Schinner on both points. We apply case law addressing when a physical assault qualifies as an "accident" for purposes of insurance coverage and, in doing so, conclude that the assault here was an "occurrence." We also conclude that the non-insured location exclusion does not apply, because Schinner's injuries did not "arise out of" the family business property. Accordingly, we reverse the judgment and remand for further proceedings.

## BACKGROUND

¶ 2. The dispositive facts are undisputed based on the summary judgment record. Twenty-one-year-old

Gundrum was covered under his parents' West Bend homeowner's insurance policy as a resident of their household.[1] Gundrum hosted a party in a shed on his family's business property. The Gundrums had been using the shed, at least in part, to store personal property, including snowmobiles explicitly listed in the homeowner's policy.

¶ 3. It is alleged that, during the party, Gundrum provided alcohol to Matthew Cecil, who was under the legal drinking age. Cecil became belligerent and assaulted Schinner, who suffered serious injuries as a result. The parties agree that this was an intentional assault, and that the injuries did not result from inadvertent or merely reckless conduct by Cecil. The parties also agree that there is no allegation that Gundrum personally participated in or assisted Cecil in the assault.

¶ 4. Schinner sued Gundrum for negligence, alleging that Gundrum's conduct, which included providing alcohol to Cecil, was a cause of the assault and thus of Schinner's injuries. West Bend was added to the suit and moved for summary judgment, arguing that it should be dismissed from the action because there was no "accident," and therefore no "occurrence," under the policy. West Bend also argued that there was no coverage based on a policy exclusion barring coverage for harm arising out of a non-insured location. The circuit court agreed with West Bend on both points and dismissed West Bend from the case. Schinner appealed. We reference additional facts as necessary below.

---

[1] To be precise, the policy is labeled a "home and highway" policy, and includes automobile coverage. However, the automobile portion of the policy is not relevant here, so, in the interest of brevity, we refer to the policy as a "homeowner's" policy.

## DISCUSSION

¶ 5. This case involves the interpretation and application of insurance policy terms to undisputed facts, which is a question of law that we review de novo, while benefitting from legal analysis provided by the circuit court. *See American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65. We construe the terms of an insurance policy as a reasonable insured would understand them. *Id.*

¶ 6. We first address whether the undisputed facts establish an "occurrence." Because we conclude that they do, we also address the non-insured location exclusion.

### A. Existence of an "Occurrence"

¶ 7. The primary issue is whether, given the undisputed facts here, there is an "occurrence" for purposes of coverage under the Gundrums' homeowner's policy. The policy includes personal liability coverage that applies to a claim or suit against an insured "for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence.' " "Occurrence" is defined in the policy as follows:

> "Occurrence" means an *accident,* including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the coverage period, in:
>
> **a.** "Bodily injury"; or
>
> **b.** "Property damage."

(Emphasis added.)

199

¶ 8. Our focus is on the term "accident." The policy does not define "accident." In prior cases, when this term is undefined in an insurance policy, courts have looked to the following dictionary definitions:

- "[A]n event or condition occurring by chance or arising from unknown or remote causes."

- "The word 'accident,' in accident policies, means an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or cause must be accidental."

*Id.*, ¶ 37 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 11 (2002); BLACK'S LAW DICTIONARY 15 (7th ed. 1999)); *see also Doyle v. Engelke*, 219 Wis. 2d 277, 289, 580 N.W.2d 245 (1998) (" 'accident' is defined as '[a]n unexpected, undesirable event' or 'an unforeseen incident,' which is character-ized by a 'lack of intention.' " (quoting THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 11 (3rd ed. 1992))).

¶ 9. Schinner argues, in part, that the act of the insured, Gundrum, in providing alcohol to an underage guest, who then caused injuries, was an act of negli-gence and, therefore, an "accident." Schinner also ar-gues that the assault was an occurrence because, al-though Cecil intentionally assaulted Schinner, the assault was an "accident" from Gundrum's standpoint.

¶ 10. For the reasons that follow, we agree with Schinner that the assault was an "accident" from Gundrum's standpoint, and it was also an "accident" from Schinner's standpoint. We therefore conclude that the assault was an "occurrence," at least for purposes of determining an initial grant of coverage under the

Gundrums' policy. Although it may seem counterintuitive to think of an assault as accidental, we rely on Wisconsin case law that has addressed whether an assault is an "accident" for purposes of insurance coverage.

¶ 11. Our analysis begins with a line of cases in which the supreme court has concluded that, for purposes of determining whether an assault is an "accident" or "accidental" under an insurance policy, the assault and resulting injuries must be viewed from the standpoint of the person injured. *See Tomlin v. State Farm Mut. Auto. Liab. Ins. Co.*, 95 Wis. 2d 215, 219, 222, 290 N.W.2d 285 (1980); *Fox Wisconsin Corp. v. Century Indem. Co.*, 219 Wis. 549, 551, 263 N.W. 567 (1935); *Button v. American Mut. Accident Ass'n*, 92 Wis. 83, 85, 65 N.W. 861 (1896). The court reasons that, when viewed from the standpoint of the injured party, the assault and resulting injuries are an "accident" or "accidental" because the injured party did not intend, expect, or anticipate the assault or resulting injuries. *See Tomlin*, 95 Wis. 2d at 219, 222; *Fox*, 219 Wis. at 551; *Button*, 92 Wis. at 85.

¶ 12. To illustrate further, we briefly summarize the two most pertinent cases, *Fox* and *Tomlin*.

¶ 13. In *Fox*, an employee of the insured, which was a theater, assaulted a patron. *Fox*, 219 Wis. at 549–50. The policy provided coverage for "bodily injuries . . . accidentally sustained by any person or persons." *Id.* at 551. The court stated that "[w]hether or not an injury is accidental . . . is to be determined from the standpoint of the person injured." *Id.* The court explained as follows:

> The facts show that the injury to the patron came to him through force not of his own provocation. *From his*

201

*standpoint, then, the injuries were "accidentally sus-
tained."* In the absence of some provision in the policy
which excludes liability for such injuries, the meaning
of "accidentally sustained" becomes plain and control-
ling . . . . The patron, whose injury gave rise to the
liability, was assaulted, and, in a sense, the act was
unlawful and intentional; still, *considered objectively, it
occurred without the agency of the patron,* and, so far as
these particular parties are concerned, the act may be,
and legally is to be, termed accidental.

*Id.* (emphasis added) (citations omitted).

¶ 14. In *Tomlin,* an individual insured under an
automobile insurance policy stabbed a police officer
who had stopped his vehicle. *Tomlin,* 95 Wis. 2d at
216–17, 219–22. The policy covered bodily injury
"caused by accident." *Id.* at 218. The court explained:

In determining whether an injury is "caused by
accident" or "accidentally sustained" within the cover-
age afforded by a liability insurance policy, the courts
have been primarily concerned with the question of
*whether the occurrence is to be viewed from the stand-
point of the injured person or the insured.* The majority
of courts, including this court, when considering the
question, have held or recognized that the determina-
tion of whether injuries resulting from an assault were
caused by "accident" or "accidentally sustained" *must be
made from the standpoint of the injured party,* rather
than from that of the person committing the assault.

*Id.* at 219 (emphasis added). The court concluded that,
"[f]rom the standpoint of [the officer], the events giving
rise to his injuries were neither expected nor antici-
pated by him, and his injuries were therefore 'caused by
accident' within the meaning of the policy." *Id.* at 222;
*see also Button,* 92 Wis. 83 at 85 ("It seems quite well
settled that an injury intentionally inflicted on the

202

insured person by another is an 'accidental injury,' when such injury is unintentional on the part of the insured." (citation omitted)).

¶ 15. Here, unlike in *Fox* and *Tomlin*, the assault was committed by a third party (Cecil) instead of by an insured under the policy at issue. However, so far as we can discern, this should not affect whether the assault is viewed as an "accident." Regardless of whether the assailant is the insured, the assault is "accidental" from the standpoint of the injured party under the rationale as explained in *Fox* and *Tomlin*. There is no claim that Schinner provoked or caused the assault. Accordingly, under *Fox* and *Tomlin*, the assault here is an "accident," and therefore an "occurrence," for purposes of coverage under the Gundrums' policy.

¶ 16. West Bend argues that we should reach the opposite conclusion under a more recent supreme court case, *Estate of Sustache v. American Family Mutual Insurance Co.*, 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845. We disagree, although as we explain, *Estate of Sustache* does seem to conflict with *Fox* and *Tomlin* on the question of whose vantage point—the injured party's or the insured's—courts should use to determine whether an event is an "accident" qualifying as an "occurrence." Here, the outcome of the analysis is the same when viewed from either vantage point.

¶ 17. *Estate of Sustache* involved a definition of "occurrence" identical to the one in this case and, as here, an assault at an underage drinking party. *See id.*, ¶¶ 5–6, 9, 30. The difference is that the individual who committed the assault in *Estate of Sustache* was, as in *Fox* and *Tomlin*, an insured under the policy at issue. *See id.*, ¶¶ 3, 5, 8. The court in *Estate of Sustache* concluded that the insured's actions in committing the assault were not "accidental" and, therefore, did not

give rise to an "occurrence." *Id.*, ¶ 56. Thus, *Estate of Sustache* seems to conflict with *Fox* and *Tomlin* insofar as the court in *Estate of Sustache* did not view the assault from the standpoint of the injured party, as the courts in *Fox* and *Tomlin* did.

¶ 18. We set forth the central reasoning of *Estate of Sustache* in some detail before continuing our analysis:

> Considering the discussion of "accident" in *Doyle*, we cannot conclude that an allegation that [the insured] "intentionally caus[ed] bodily harm to [Sustache]" could reasonably be "characterized by a 'lack of intention.'" *Doyle*, 219 Wis. 2d at 289 (quoting THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 11 (3d ed. 1992)). The *Doyle* court noted that an "accident" might be viewed as "an unintentional occurrence leading to undesirable results." *Id.* at 290. [The insured]'s alleged decision to intentionally "punch out" Sustache may have produced unexpected results [Sustache's death], but this intentional act did not constitute an "accident." *One cannot "accidentally" intentionally cause bodily harm.*
>
> . . . .
>
> Like the allegation of a pre-sale misrepresentation of fact in *Everson* [*v. Lorenz*, 2005 WI 51, 280 Wis. 2d 1, 695 N.W.2d 298], the allegations of intentional battery here evince a degree of *volition* inconsistent with the term "accident." *See Everson*, 280 Wis. 2d 1, ¶ 19 . . . .
>
> . . . .
>
> We conclude that no reasonable person would regard the alleged intentional battery perpetrated by [the insured] against Sustache as an "unexpected . . . event," or an "unforeseen incident . . . characterized by a lack of intention," or "an event . . . occurring by chance or arising from unknown or remote causes." . . . *[The*

204

> *insured] intentionally caused bodily harm to Sustache.* Accordingly, we hold that the . . . policy does not cover the plaintiffs' claims because [the insured]'s actions were not accidental and, thus, did not give rise to an "occurrence."

*Estate of Sustache*, 311 Wis. 2d 548, ¶¶ 52–56 (emphasis added; emphasis on "volition" in original) (footnotes omitted).

¶ 19. Based on this reasoning, it appears that there are two ways to read *Estate of Sustache*. One is that the court reasons that there was no "accident," and therefore no "occurrence," because an assault is by definition an intentional act when viewed from the point of view of the assailant, regardless of whether the assailant is the insured under the insurance policy at issue. The other is that the court reasons that the assault was not accidental because *the insured* intended the assault and intended bodily harm. We conclude that the second reading is the more reasonable one. In effect, the court views the assault from the standpoint of the insured and, viewed from that standpoint, the court concludes that the assault was not accidental.

¶ 20. Our reading of *Estate of Sustache* is supported by the court's reliance on a section of a leading insurance law treatise, which addresses the circumstances under which an assault may or may not be deemed an "accident" or "occurrence." *See id.*, ¶ 53 n.13 (quoting LEE R. RUSS & THOMAS F. SEGALLA, 9 COUCH ON INSURANCE § 127:21 (3d ed. 2000)). Although the court in *Estate of Sustache* quoted the treatise section only partially, the court relied on a portion of the treatise section explaining that many courts determine whether an event is an accident from the standpoint of the insured. *See id.*; 9 COUCH ON INSURANCE § 127:21.

205

¶ 21. Because the court in *Estate of Sustache* viewed the assault from the standpoint of the insured instead of the injured party, without addressing *Fox* and *Tomlin* or further discussing the treatise section, we are uncertain whether courts in Wisconsin should now view an assault, in the context of insurance policy "occurrence" or "accident" terminology, from the standpoint of the injured party or from the standpoint of the insured. However, for purposes of this case, it does not matter. Regardless of which way we view it, the result is the same because the assault was an accident from *both* the standpoint of the injured party (Schinner) and the insured (Gundrum). Neither Schinner nor Gundrum could be said to have intended the assault or an injury to Schinner.

¶ 22. West Bend argues that there is no occurrence because, in hosting the party and providing the alcohol, Gundrum took actions that were "intentional" and "nonaccidental." In support of this argument, West Bend relies on cases cited in *Estate of Sustache* in which the court concluded that certain types of "volitional" acts by an insured cannot form the basis for an occurrence. *See Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, ¶¶ 1, 27–32, 311 Wis. 2d 492, 753 N.W.2d 448; *Everson v. Lorenz*, 2005 WI 51, ¶¶ 1, 18–20, 280 Wis. 2d 1, 695 N.W.2d 298; *see also Doe 1 v. Archdiocese of Milwaukee*, 2010 WI App 164, ¶¶ 1, 3, 10–13, 330 Wis. 2d 666, 794 N.W.2d 468. However, we conclude that this argument is misplaced, because it goes to whether *Gundrum's* actions are an "occurrence," not to whether the *assault* is an occurrence. We do not address whether Gundrum's actions could be deemed an "occurrence"; it is not necessary for us to do so, given our conclusion that the assault constituted an "occurrence."

¶ 23. West Bend also argues that the situation here is "on point" with the one in *James Cape & Sons Co. v. Streu Construction Co.*, 2009 WI App 154, 321 Wis. 2d 604, 775 N.W.2d 117. We disagree. *James Cape & Sons* involved allegations of damages caused by a criminal bid-rigging conspiracy undertaken by certain insured parties. *Id.*, ¶¶ 1, 7, 18. The court concluded that the insurers had no duty to defend the insureds' intentional, criminal acts. *Id.*, ¶¶ 4, 18. The court relied on the "principle of fortuity," under which "insurance covers fortuitous losses[,] and [] losses are not fortuitous if the damage is *intentionally caused by the insured.*" *Id.*, ¶ 15 (quoting *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 483–84, 326 N.W.2d 727 (1982) (emphasis added)). Here, as we have already discussed, it is not alleged that Gundrum, the insured, intentionally caused Schinner's injuries.[2]

---

[2] We recognize that our analysis suggests overlap between how courts determine whether there is an accidental "occurrence" and how courts determine whether, if there is an "occurrence," coverage may be barred by an exclusion found in some policies for harm that is "expected or intended by the insured." *See Loveridge v. Chartier*, 161 Wis. 2d 150, 166–70, 468 N.W.2d 146 (1991); *Pachucki v. Republic Ins. Co.*, 89 Wis. 2d 703, 707–10, 278 N.W.2d 898 (1979); *Poston v. United States Fid. & Guar. Co.*, 107 Wis. 2d 215, 216–23, 320 N.W.2d 9 (Ct. App. 1982). However, to the extent there is overlap, it seems unavoidable, given the courts' reasoning in *Estate of Sustache v. American Family Mutual Insurance Co.*, 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845, and *James Cape & Sons Co. v. Streu Construction Co.*, 2009 WI App 154, 321 Wis. 2d 604, 775 N.W.2d 117. In addressing whether there was an "occurrence" in each of those cases, the court considers whether the insured intended to cause harm. *See Estate of Sustache*, 311 Wis. 2d 548, ¶¶ 52–56; *James Cape & Sons*, 321 Wis. 2d 604, ¶ 15.

¶ 24. In sum, for the reasons stated, we conclude that the assault was an "accident," and therefore an "occurrence," under the Gundrums' policy.[3]

Confusion among litigants and authorities in this area may result, in part, from changes over time in the definition of "occurrence" in some standard form insurance policies. Treatises explain that there was a period of time during which the definition of "occurrence" in policies incorporated what is now broken out separately in the "expected or intended by the insured" exclusion. *See* 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 18.02[6][a] (Jeffrey E. Thomas & Francis J. Mootz, III eds., 2009); LEE R. RUSS & THOMAS F. SEGALLA, 9 COUCH ON INSURANCE § 127:21 (3d ed. 2000). Thus, an "occurrence" was defined during the earlier period as "an accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *See* 3 NEW APPLEMAN ON INSURANCE § 18.02[6][a]; 9 COUCH ON INSURANCE § 127:21.

We note that, in *Estate of Sustache*, the portion of COUCH ON INSURANCE that the court relies on addresses how courts interpret the definition of "occurrence" when it includes the "expected or intended" language, even though the policy definition in *Estate of Sustache* did *not* include that language. *Compare Estate of Sustache*, 311 Wis. 2d 54, ¶¶ 32, 53 n.13, *with* 9 COUCH ON INSURANCE, § 127:21.

Because the extent of the overlap we have identified is unclear, and because West Bend does not argue here that the "expected or intended by the insured" exclusion applies, we do not rely on the case law that addresses the "expected or intended by the insured" exclusion. Similarly, we do not rely on *Patrick v. Head of the Lakes Cooperative Electric Ass'n*, 98 Wis. 2d 66, 295 N.W.2d 205 (1980), which Schinner cites, because the policy definition of "occurrence" in *Patrick* included the "expected or intended" language. *See id.* at 68.

[3] For the following reasons, we decline to address a separate argument Schinner makes, based on an exclusion, to support his position that a reasonable insured would believe there is an initial grant of coverage. Schinner points out that the Gundrums had a separate, CGL policy with West Bend that uses the same

## B. Non-insured Location Exclusion

■■

¶ 25. We turn next to the exclusion for non-insured locations. "[E]xclusions in an insurance policy are narrowly construed against the insurer." *Day v. Allstate Indem. Co.*, 2011 WI 24, ¶ 29, 332 Wis. 2d 571, 798 N.W.2d 199 (citation omitted). "[I]f the effect of an exclusion is ambiguous or uncertain, it will be construed in favor of coverage." *Id.*

¶ 26. As previously indicated, the Gundrums' homeowner's policy includes a broad grant of personal liability coverage that applies to a claim or suit against an insured "for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence.' " The policy also includes "property coverage" for the Gundrums' residence. However, the non-insured location exclusion bars coverage for " '[b]odily injury' or 'property damage' arising out of a premises . . . [o]wned by an insured . . . that is not an 'insured location.' " "Insured

definition of occurrence but, unlike the Gundrums' homeowner's policy, contains a "liquor liability" exclusion barring coverage for

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; . . . .

Schinner argues that the presence of this liquor liability exclusion in the CGL policy, but not in the homeowner's policy, would lead the Gundrums to reasonably expect that they were covered under their homeowner's policy for a situation like the one here. We decline to discuss this argument further because Schinner does not present us with argument supported by legal authority on the question of whether or under what circumstances it is appropriate for courts to interpret one insurance policy by reference to another policy.

209

location" is defined to include the "residence premises" as well as "[a]ny premises used by you in connection with" the residence premises.[4]

¶ 27. The parties dispute the applicability of this exclusion in two respects. First, citing *Newhouse v. Laidig, Inc.*, 145 Wis. 2d 236, 426 N.W.2d 88 (Ct. App. 1988), they dispute whether Schinner's injuries "aris[e] out of" the shed, where the party took place. Second, they dispute whether the shed was used by the Gundrums "in connection with" their residence. As previously noted, although the shed was located on family business property, the Gundrums used it, at least in part, to store personal property, including snowmobiles listed in their homeowner's policy. The exclusion bars coverage only if Schinner's injuries "aris[e] out of" the shed *and* the Gundrums did not use the shed "in connection with" their residence.

¶ 28. We conclude for the reasons explained below that, under *Newhouse*, Schinner's injuries do not "aris[e] out of" the shed under the terms of the policy because, while it was the undisputed physical situs of injury, no particular condition of the premises correlates to the basis of liability for the injury. Therefore,

---

[4] "[I]nsured location" is defined more fully in the policy, in relevant part, as follows:

> **a.** The "residence premises";
>
> **b.** The part of other premises, other structures and grounds used by you as a residence; and
>
> > **(1)** Which is shown in the Declarations; or
> >
> > **(2)** Which is acquired by you during the coverage period for your use as a residence;
>
> **c.** Any premises used by you in connection with a premises described in **a.** and **b.** above[.]

the exclusion does not apply. For this reason, we need not address whether the Gundrums used the shed "in connection with" their residence.

¶ 29. In *Newhouse*, a minor plaintiff was injured in a silo unloader and alleged that the defendants negligently caused his injuries by leaving him alone in the silo while the unloader was operating. *Id.* at 237–38. One of the defendants was an insured under a homeowner's insurance policy that, like the one here, included a broad grant of personal liability coverage as well as provided coverage for the insured's residence. *See id.* at 238–39. The policy contained an exclusion, similar to the one here, providing that the personal liability coverage would not apply to "bodily injury or property damage ... *arising out of* any premises owned or rented to any insured which is not an insured location." *Id.* at 239 (emphasis added). The court concluded that the exclusion did not apply. *Id.* at 237.

¶ 30. The court in *Newhouse* did not address whether the silo was part of premises "owned [by] or rented to" the insured, but focused instead on the "arising out of" language. *Id.* at 239–40, 242–43. The court explained as follows, adopting the reasoning of *Lititz Mutual Insurance Co. v. Branch*, 561 S.W.2d 371 (Mo. Ct. App. 1977):

> The court in *Lititz* held that in order to arise out of such premises, the specific tortious conduct "originates from, grows out of, or flows from" such premises. [*Lititz*, 561 S.W.2d] at 373. The court reasoned that the exclusion related to *conditions of the premises* on which an accident or occurrence takes place but that it did not apply to insureds' tortious acts occurring on uninsured lands ....

We agree with the reasoning in *Lititz*. It makes no difference whether the insured owns the premises on which his tortious act takes place. Under the policy's terms, there is floating coverage for the insured's tortious personal acts wherever he might be. *The dispositive issue therefore is whether there is some correlation between the negligence giving rise to liability and a condition of the premises.* In the present case, there is no evidence that the alleged negligence in leaving [the injured plaintiff] unattended in the silo *was related to the condition of any premises as required under the exclusion.* Rather, it was the alleged tortious conduct of [the defendants] that caused [his] injuries. Accordingly, the exclusion is inapplicable.

*Newhouse*, 145 Wis. 2d at 239–40 (emphasis added).

¶ 31. Thus, under *Newhouse*, the question is whether there is "some correlation between the negligence giving rise to liability and *a condition* of the premises." *Id.* at 240 (emphasis added). And, to show this correlation, the insurer must present evidence that the alleged negligence is "related to the condition of" the premises. Stated another way, the exclusion applies when liability arises *because of* some condition of the premises. *See* 46 C.J.S. INSURANCE § 1359 (2007) ("Where the exclusionary clause excludes coverage for injury or damage arising out of premises, coverage is excluded where the liability is incurred *because of the condition of uninsured premises,* but is not excluded where the liability is incurred because of tortious personal conduct occurring on uninsured premises." (emphasis added) (footnotes omitted)).

¶ 32. Applying *Newhouse* here, the exclusion does not apply because there is no evidence of a correlation between the alleged tortious conduct and any condition

of the shed. That is, there is no evidence that Gundrum's liability arises because of some condition of the shed; no condition of the shed was a cause of the assault or Schinner's injuries.

¶ 33. West Bend asserts there is evidence that Gundrum chose the shed for the underage drinking party based on its size and secluded location. West Bend argues that those features of the shed made it conducive to an illegal underage drinking party and, therefore, the necessary "correlation" exists. We are not persuaded.

¶ 34. West Bend's argument interprets the exclusion broadly, instead of narrowly as is required. *See Day*, 332 Wis. 2d 571, ¶ 29. And, it expands the "correlation" concept beyond what is supported by the facts and reasoning in *Newhouse*. The silo unloader in *Newhouse* had at least as much of a connection to the alleged negligence in *Newhouse* as does any feature of the shed to Gundrum's allegedly tortious conduct. The unloader was the direct instrument of the injury in *Newhouse*. Yet the court in *Newhouse* saw no "correlation" between the unloader and the defendants' negligent acts of leaving the minor plaintiff unattended with the unloader. Based on this standard, even assuming that the shed was in some respects an especially attractive location for an illegal underage drinking party that presented dangers of various kinds to participants, including potentially violent conduct by inebriated, youthful attendees, this does not constitute the type of "correlation" that *Newhouse* requires.

¶ 35. In sum, the non-insured location exclusion does not apply because Schinner's injuries do not "arise out of" the shed.

## CONCLUSION

¶ 36. For all of the reasons stated, we reverse the circuit court judgment dismissing West Bend from this case and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.