ANN WALSH BRADLEY, J.
¶ 98. (dissenting). I agree with the majority when it holds that the determination of what constitutes an "occurrence" under the insurance policy is to he analyzed from the standpoint of the insured, not the injured party. Majority op., ¶ 52. I part ways with the majority, however, when it fails to apply that holding.
¶ 99. Like the unanimous court of appeals, I conclude that the "occurrence" here is the event of an assault. The insurance policy defines an "occurrence" as an "accident."
¶ 100. Applying the proper analysis, the question then becomes whether the assault of Schinner by the assailant was an "accident" from the standpoint of Gundrum, the insured? As even the majority acknowl *570 edges, there is nothing in the record that suggests that Gundram intended the assault or any subsequent injury to Schinner. See id., ¶ 67. Accordingly, when viewed from the standpoint of the insured, the assault was unintended and was an "accident," constituting an "occurrence" under the policy.
¶ 101. Instead of identifying the assault as an "occurrence," the majority's analysis simply ignores it. Rather than analyzing an "occurrence" from the standpoint of the insured, it develops a different test, conflating a discussion of negligence principles with the analysis required to interpret an undefined word in an insurance policy. Ultimately, its analysis undermines the well-established understanding that an intentional act by an insured is within the definition of an "occurrence" if the injury is unexpected and unintended.
¶ 102. In contrast to the majority, I conclude that the assault is an "occurrence" for the purposes of coverage and I further conclude that the non-insured location exclusion does not apply under these circumstances. As a result, the relevant insurance policy provides coverage for damages arising from Schinner's injuries. Accordingly, I respectfully dissent.
I
¶ 103. The Second Amended Complaint filed in this case identifies the assault as the occurrence. It alleges that Schinner was "kicked... in the head [by the assailant], causing permanent paralysis." The claims alleged against Gundram sound in negligent supervision, negligence in failing to protect Schinner, and negligence as a matter of law.[1]
*571 ¶ 104. Recognizing that identifying the event that should be considered the "occurrence" is critical to the coverage analysis, the majority jettisons the allegation of an "occurrence" stated in the Second Amended Complaint and asks what is "the injury-causing event in this case?" Majority op., ¶ 66. It answers the question by pointing to a course of conduct by Gundrum that allegedly was a cause of Schinner's bodily injury and accordingly shifts its focus to Gundrum's acts as the apparent "occurrence" without further discussion of the assault. Id.
¶ 105. The remainder of the majority's analysis is fixed upon developing a new objective test that examines remote theories of legal causation and events that occurred up the chain of causation. It states that "Gundrum took a number of intentional actions that ultimately caused Schinner's bodily injury." Id., ¶ 68. Ultimately, it concludes that "Gundrum's many intentional acts were a substantial factor in causing Schinner's bodily injury." Id., ¶ 69.
*572 ¶ 106. Gundruxn's alleged negligent acts are repeatedly characterized as "intentional" and "illegal."[2] See id., ¶¶ 69, 70, 81. The majority takes Gundrum to task for failing to foresee Sehinner being injured in an assault, stating that Schinner's "bodily injury was hardly unforeseeable." Id., ¶ 70. Because his acts were both "intentional" and "illegal" and because he should have foreseen a risk of harm, the majority concludes that there was no "accident," and thus no "occurrence." Id., ¶ 81.
II
¶ 107. At the outset, I observe that if the majority actually applied a "from the standpoint of the insured" test, it would be compelled to conclude that there is an initial grant of coverage. Guided by public policy, however, it instead concludes that there should be no insurance coverage for hosting an illegal underage drinking party.
¶ 108. In its quest to avoid "sending the wrong message" about underage drinking parties, the majority *573 looks at the wrong policy. Majority op., ¶ 80. Instead of looking at public policy, it should be looking at the policy of insurance.
¶ 109. This homeowner's policy has a broad grant of coverage. To narrow that coverage, the insurer in this case had available to it several standard exclusions that are relevant here:
• An underage drinking exclusion;[3]
• An illegal acts exclusion;[4]
• An intentional acts exclusion.[5]
¶ 110. Despite the availability of those exclusions, the insurer chose not to include them in the Gundrums' homeowner's insurance policy or assert them as a defense to coverage. As a result of those deficits, the majority is forced to look elsewhere for support of its public policy determination. It is not the court's role in this case to send a policy message, right or wrong, about *574 underage drinking parties or to determine whether Gundrum should "escape responsibility" under these facts. Majority op., ¶ 80. It is this court's role to interpret the insurance policy — the written contract entered into by the parties.
¶ 111. I turn next to discuss the primary flaws in the majority's opinion. Its analysis: (a) ignores the need to analyze the assault as an "occurrence," (b) develops a new objective test that conflates principles of negligence with the analysis required to interpret an undefined word in an insurance policy, and (c) undermines the well-established premise that intentional acts constitute an "occurrence" if the injury is unexpected or unintended.
A
¶ 112. The majority's public policy focus leads it to ignore the assault as an "occurrence." Contrary to what the majority implies when it sets up a question setting forth two potential occurrences, whether an "occurrence" exists under a set of alleged facts is not an either-or proposition requiring the court to choose between Gundrum's acts and the assault.[6] An "occurrence" in this case is easily identified. As the court of *575 appeals unanimously recognized, the assault itself is the correct focus of the "occurrence" when viewed from the standpoint of Gundrum. Schinner v. Gundrum, 2012 WI App 31, ¶ 22, 340 Wis. 2d 195, 811 N.W.2d 431.
¶ 113. Our prior precedent recognizes that an intentional assault by a third party can constitute an "occurrence." In Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845, this court was called upon to determine whether an intentional assault by an insured was an "occurrence," defined as an "accident." Although the court determined that the assault was not an "occurrence," Estate of Sustache is distinguishable because the insured in that case was the assailant and intentionally caused the damage. Id., ¶ 31.
¶ 114. Further context is found in the analysis of this court in Stuart v. Weisflog's Showroom Gallery, Inc., 2008 WI 86, 311 Wis. 2d 492, 753 N.W.2d 448. The Stuart court observed that courts must "focus on the incident or injury that gives rise to the claim, not the plaintiffs theory of liability." Id., ¶ 36 (quoting Serge. Schultz, 190 Wis. 2d 170, 177, 526 N.W.2d 781 (Ct. App. 1994)).[7] In this case, the assault is an incident that gave rise to the claims at issue.
*576 ¶ 115. The above cases counsel that when viewed from Gundrum's standpoint, the "occurrence" is the assault on Schinner. Couch on Insurance further supports that the assault in this case is an "occurrence" under the policy. It explains that when the insured is not an assailant in a claim involving an assault, the assault can constitute an "occurrence" when viewed from the standpoint of the insured:
If the insured is also the assailant, the result is that there is no coverage for the assault. . .. However, where the insured is not the assailant but is instead liable based upon vicarious liability, negligent supervision, or some other negligence theory, the assault may constitute an accident or occurrence, at least from the standpoint of the insured.
Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 127:21 (3d ed. 2012).
¶ 116. The majority fails to explain why the assault is not an "occurrence" when viewed from the standpoint of the insured. Instead of analyzing the assault as the "occurrence," it is simply ignored.
B
¶ 117. Furthermore, the majority develops a test that conflates a discussion of negligence principles with the analysis required to interpret the undefined word, "accident," in an insurance policy. In developing that *577 test, it introduces concepts that are superficially compelling, but which really do not, or should not, drive its analysis.
¶ 118. The majority appears to analyze this case with an objective test in mind, looking at whether the resulting injury or damage was reasonably foreseeable to a reasonable person. That analysis is irrelevant. As the majority recognized at the outset, the question to ask is: "Did this insured expect or intend the injury or property damage?"
¶ 119. When applying the wrong test, the majority takes Gundrum to task for failing to foresee a fight. It appears to conclude that a failure to anticipate or foresee a foreseeable risk of harm is not an "accident." Majority op., ¶ 71. Yet, injury or damage that should have been anticipated or foreseen but was not is the very essence of negligence.[8] Such a test conflates negligence principles with the concept of what constitutes an "accident" when interpreting this insurance policy.
¶ 120. Negligence is defined as when "the person, without intending to do harm, does something . .. that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." Wis. JI-Civil 1005 (2013). In concluding that failure to anticipate or foresee harm here is not an "accident," the majority is really declaring that because negligent behavior is non-accidental, it is not covered *578 by insurance liability policies. That makes no sense because the very reason people buy liability insurance is to cover them for their negligent acts.
¶ 121. In contrast, when interpreting the undefined word "accident" in a liability insurance policy, we often look to precedent for guidance. This court has set forth a definition of the term "accident": " '[a]n unexpected, undesirable event1 or 'an unforeseen incident' which is characterized by a 'lack of intention.'" Doyle v. Engelke, 219 Wis. 2d 277, 289, 580 N.W.2d 245 (1998). The definition of an "accident" by its nature encompasses foreseeable events that were not in fact foreseen by the insured.
¶ 122. The Doyle court recognized that most negligence is accidental for the purposes of interpreting an insurance policy, stating that liability policies are "designed to protect an insured against liability for negligent acts resulting in damage to third-parties." Id. at 290 (citations omitted). In short, our prior precedent recognizes that we buy insurance to cover us when we are negligent.
¶ 123. The majority's focus on the fact that Gun-drum should have anticipated or foreseen that "something undesirable" might occur is inconsistent with the definition of an "accident" set forth in Doyle [9] Majority op., ¶ 71 (emphasis in original). An "accident" is an unforeseen event that causes injury or damage — not an unforeseeable risk of harm that causes injury or damage.
*579 ¶ 124. To the extent the majority opinion can he read to state that a risk of harm that should have been anticipated or foreseen is not an "accident" even when the risk in fact is unanticipated and unforeseen, it has rendered liability coverage illusory in many circumstances. Defining the word "accident" so narrowly "so greatly restricts the insurer's liability as to render the policy valueless or even meaningless, and denies coverage for what is the predicate of any likely liability against the insured." J. E Ludington, Liability Insurance: "Accident" or "Accidental" as Including Loss Resulting From Ordinary Negligence of Insured or his Agent, 7 A.L.R.3d 1262, § 2 (1966).
C
¶ 125. Ultimately, the majority's analysis undermines the well-established understanding that an intentional act by an insured is within the definition of an "occurrence" if the injury or damage is unexpected and unintended. Multiple treatises discussing general principles of insurance law explain that an "occurrence" exists if the injury or damage is unexpected and unintended.
¶ 126. One treatise provides that the "vast majority of decisions" have held that "intentional conduct can constitute an accident if the insured did not intend or expect to cause injury." Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies & Insureds, § 11:3 (2013). It sets forth the straightforward rule embraced by the "vast majority of decisions" as follows:
The correct analysis is as follows. An "occurrence" is defined in a typical general liability policy as an "accident." The word "accident" must be given its ordinary, *580 dictionary definition, and the ordinary, dictionary definition of "accident" is a happening that occurs unintentionally. Accordingly, damage that the insured intended —including. .. damage that is inherent or substantially certain to result — is not covered. Damage that the insured did not intend is covered.... In fact.. . damage that the insured did not intend is covered regardless of whether the insured's act was volitional. A standard insuring agreement requires only that the property damage/bodily injury have been caused by an occurrence/accident. It is enough if the damage/injury "occurs unintentionally" by reason of something that the insured has done.
Id. In an admonition that should give the majority pause, it further states that courts should "[k]eep in mind" that "under standard policy language, the "occurrence" is not limited to actions taken by the insured, but includes any event that causes injury/damage during the policy period." Id.
¶ 127. Another treatise observes that courts ordinarily examine "whether the insured intends or expects the results of its conduct, not necessarily whether the insured intends or expects the conduct itself, to determine whether there is an 'occurrence'. . . ." 1 New Appleman Law of Liability Insurance, § 1.09[1] (2d ed. 2012). Yet another states that "in order for a claim to be actionable under a liability policy, the insured's negligence must result in an 'accident'... [t]he word 'accident' implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune." Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 126:26 (3d ed. 2012). Many jurisdictions have accordingly focused on whether the injury or damages were unexpected and unintended. See J.E Luddington, Liability Insurance: *581 "Accident" or "Accidental" as Including Loss Resulting From Ordinary Negligence of Insured or his Agent, 7 A.L.R.3d 1262 (1966).
¶ 128. This court has long adhered to the principle that insurance policies are to be interpreted as understood by a reasonable person in the position of the insured. Frost v. Whitbeck, 2002 WI 129, ¶ 20, 257 Wis. 2d 80, 654 N.W.2d 225. A reasonable person in the position of the insured understands the word "accident" to encompass unexpected and unintended injuries or damages. See Doyle, 219 Wis. 2d 277, 289 (ascribing the "common, everyday meaning" to the word "accident").
¶ 129. The majority's analysis not only appears to require unexpected and unintended injury or damage, but also that the acts of the insured non-assailant must be unintentional. Majority op., ¶ 68. Such a requirement appears to eliminate coverage anytime an insured acts with intention, regardless of whether the injury or damage is unexpected and unintended.[10]
*582 ¶ 130. In determining that there is no coverage under the insurance policy, the majority fails to apply its holding that the determination of what constitutes an "occurrence" is to be analyzed from the standpoint of the insured. Instead it simply ignores the assault as an "occurrence," develops an objective test that conflates a discussion of negligence principles with the analysis required to interpret an undefined word in an insurance policy, and undermines the well-established understanding that an intentional act by an insured is within the definition of an "occurrence" if the injury or damage is unexpected and unintended. By failing to apply its holding, the majority is led astray.
Ill
¶ 131. Even though the majority's coverage analysis should end with its determination that there is no coverage, it nevertheless proceeds to analyze whether coverage should be denied because of an exclusion for bodily injury or property damage liability "arising out of a premises" that is not an insured location. Majority op., ¶¶ 82, 83. The majority concludes for the second time that there is no coverage.
*583 ¶ 132. In contrast to the majority, I apply the tried and true principles of coverage examination and conclude that coverage is not excluded by the non-insured location exclusion. I look first to determine whether there is a grant of coverage. Estate of Sustache, 311 Wis. 2d 548, ¶ 22. If there is a grant of coverage under the facts alleged, I must determine whether an exclusion applies. Id., ¶ 23. If an exclusion applies, I then must determine whether an exception to the exclusion reinstates coverage. See id.
¶ 133. The Gundrums' homeowner's policy provides coverage for "bodily injury" or "property damage" that is "caused by an 'occurrence.'" It provides a basic grant of coverage in which the insurer agreed to pay all sums that Gundrum is legally obligated to pay as damages because of bodily injury or property damage caused by an "occurrence":
If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies....
¶ 134. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," but the word "accident" is not defined in the policy. This basic grant of coverage is substantially similar to countless standardized "occurrence"-based liability insurance policies that are purchased by individuals and businesses throughout the state. See 1 New Appleman Law of Liability Insurance, § 1.07[2] (2d ed. 2012).
¶ 135. In order to fall within the grant of coverage, the Second Amended Complaint must allege facts showing that Schinner's bodily injury was caused by an "occurrence," which is defined as an "accident." For the *584 reasons discussed above, I conclude that the assault was an "occurrence" when viewed from Gundrum's standpoint. Because the assault was an "occurrence," the allegations in the Second Amended Complaint fall within the policy's grant of coverage.
¶ 136. Having determined that the assault is an "occurrence," the next step is to determine whether an exclusion applies. Estate of Sustache, 311 Wis. 2d 548, ¶ 23. The only exclusion argued to apply in this case is a non-insured location exclusion, which excludes bodily injury "arising out of a premises" that is not an "insured location."[11] An "insured location" is defined in part as "[t]he residence premises," the "part of other premises, other structures and grounds used by you as a residence," and any premises used by the insured "in connection" with the premises described in the policy.
¶ 137. The court of appeals in Newhouse v. Ladig, Inc., 145 Wis. 2d 236, 426 N.W.2d 88 (Ct. App. 1988) addressed the same issue before this court today — what is the meaning of the phrase "arising out of a. . . premises." Its analysis is instructive in evaluating whether the non-insured location exclusion applies in this case.
¶ 138. Under the interpretation adopted in Newhouse, the non-insured location exclusion applies to bodily injuries "related to conditions of the premises on which an accident or occurrence takes place." Id. at 239. It does not, however, apply to "insureds' tortious acts occurring on uninsured lands." Id. The ultimate test for whether there was bodily injury or property damage "arising out of a ... premises" is "whether there is some *585 correlation between the negligence giving rise to liability and a condition of the premises."[12] Id. at 240.
¶ 139. Thus, under Newhouse, the facts alleged must indicate that there was some correlation between Gundrum's negligence giving rise to liability and a condition of the premises on which the assault occurred. Here, however, no condition of the shed itself or the surrounding premises is alleged to correlate with Gundrum's alleged negligence. The only arguable correlation between Gundrum's alleged negligence and the shed is that Gundrum's alleged negligence occurred at an underage drinking party hosted by Gundrum on the premises where the shed was located.
¶ 140. Such a tenuous connection to the premises is not enough to fall within the non-insured location exclusion. The Newhouse court soundly rejected the argument that tortious acts occurring on a non-insured premises are excluded from coverage:
It makes no difference whether the insured owns the premises on which his tortious act takes place. Under the policy's terms, there is floating coverage for the insured's tortious personal acts wherever he might be. The dispositive issue is therefore whether there is some correlation between the negligence giving rise to liability and a condition of the premises.
Id. at 240. Like Newhouse, it makes no difference here that the alleged tortious acts merely occurred on a non-insured premises. The exclusion is therefore inap *586 plicable and no analysis of any exceptions to the exclusion is required. Estate of Sustache, 311 Wis. 2d 548, ¶ 23.
¶ 141. Because facts alleged in the Second Amended Complaint fall within the policy's grant of coverage and because coverage is not excluded by the non-insured location exclusion, I conclude that the homeowner's policy provides coverage in this case. Accordingly, I respectfully dissent.
¶ 142. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent. I am also authorized to state that JUSTICE N. PATRICK CROOKS joins Part II of this dissent.

 Specifically, Schinner alleged a violation of Wis. Stat. § 125.035, which is commonly known as the "dram shop" law. It provides, in relevant part:
*571 (2) A person is immune from civil liability arising out of the act of procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to another person.
(4)(a) In this subsection, "provider" means a person, including a licensee or permittee, who procures alcohol beverages for or sells, dispenses or gives away alcohol beverages to an underage person in violation of s. 125.07(l)(a).
Oí) Subsection (2) does not apply if the provider knew or should have known that the underage person was under the legal drinking age and if the alcohol beverages provided to the underage person were a substantial factor in causing injury to a 3rd party. In determining whether a provider knew or should have known that the underage person was under the legal drinking age, all relevant circumstances surrounding the procuring, selling, dispensing or giving away of the alcohol beverages may be considered ....

 In order to determine whether the relevant homeowner's policy sets forth an initial grant of coverage for the claims presented, the coverage must be compared to the allegations advanced in the Second Amended Complaint. This is the first step of a coverage determination — the court must examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, ¶ 22, 311 Wis. 2d 548, 751 N.W.2d 845. If the facts do not fall within the initial grant of coverage, the analysis ends there. Id.
The Second Amended Complaint does not once use the word "intentional," whether in reference to Gundrum or in reference to the third-party assailant. It likewise makes no allegation that Gundrum in fact foresaw that a fight would occur, or that a fight was substantially certain to occur as a result of his acts.

 A standard underage drinking exclusion would provide that "[w]e will not cover bodily injury... arising out of the insured's knowingly permitting or failing to take action to prevent the illegal consumption of alcoholic beverages by an underage person." 1 Susan J. Miller, Miller's Standard Insurance Policies Annotated 238.3 (Form HOEX) (6th ed. 2012).

 A standard illegal acts exclusion would negate coverage for "bodily injury... caused by violation of a penal law or ordinance committed by or with knowledge or consent of the insured." 1 Susan J. Miller, Miller's Standard Insurance Policies Annotated 238.3 (Form HOEX) (6th ed. 2012).

 The intentional acts exclusion in the Gundrums' homeowner's policy, which was not asserted as a coverage defense here, precludes coverage for bodily injury "which is expected or intended" by an insured even if the resulting bodily injury is "of a different kind, quality or degree than initially expected or intended ... ."

 Courts are to examine the factual circumstances alleged in the complaint to determine whether an "occurrence" exists. See, e.g., Doyle v. Engelke, 219 Wis. 2d 277, 284-285, 580 N.W.2d 245 (1998)("An insurer has a duty to defend a suit where the complaint alleges facts which, if proven at trial, would give rise to the insurer's liability under the terms of the policy."); Smith v. Katz, 226 Wis. 2d 798, 807, 595 N.W.2d 345 (1999) ("The insurer's duty arises when the allegations in the complaint coincide with the coverage provided by the policy."); United Co-op v. Frontier FS Co-op., 2007 WI App 197, ¶ 15, 304 Wis. 2d 750, 738 N.W.2d 578 (courts are to look to whether "some alleged event" was an "occurrence"); Glendenning's Limestone & *575 Ready-Mix Co., Inc. v. Reimer (Glendenning's), 2006 WI App 161, ¶ 37, 295 Wis. 2d 556, 721 N.W.2d 704 ("we are to look at the factual circumstances of the claim to decide whether there is an 'occurrence' under the policy... ."); 1325 North Van Buren, LLC v. T-3 Group, Ltd., 2006 WI 94, ¶ 58, 293 Wis. 2d 410, 716 N.W2d 822 ("We have repeatedly rejected the argument that insurance coverage is dependent upon the theory of liability."). The allegations are to be liberally construed in favor of coverage. Glendenning's, 295 Wis. 2d 556, ¶ 41.

 Most recently, the court of appeals in Henshue Const., Inc. v. Terra Engineering & Const. Corp., slip op., no. 2012AP1038 (Ct. App. May 9, 2013) analyzed whether flood damage caused by the insured "deliberately" cutting into a storm sewer pipe *576 without providing means for storm water diversion was an "occurrence." The Henshue Const., Inc. court cautioned that "the correct 'occurrence' question is whether the event that caused the damage, that is, the flooding event resulting from [the insured's] failure to divert storm water, was an accident." Id., ¶¶ 60-61. Thus, the flooding event was an "occurrence." Id., ¶ 62.

 Cirillo v. City of Milwaukee, 34 Wis. 2d 705, 711, 150 N.W.2d 460 (1967) (there is no necessity in establishing negligence that the actual harm was foreseen); see also Behrendt v. Gulf Underwriters Ins. Co., 2009 WI 71, ¶¶ 29-31, 318 Wis. 2d 622, 768 N.W.2d 568 (discussing foreseeability); Rockweit v. Senecal, 197 Wis. 2d 409, 423, 541 N.W.2d 742 (1995) ("Negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk of harm to others.").

 The definition of an "accident" set forth in Doyle likewise focuses on a failure to foresee a specific harmful event rather than a failure to foresee general risk of harm. It requires an "unexpected.. . event" or "unforeseen incident," not an unexpected or unforeseen risk of an injurious event or incident. Doyle v. Engelke, 219 Wis. 2d 277, 289, 580 N.W.2d 245 (1998).

 The majority's citation to Frankenmuth Mut. Ins. Co. v. Masters (Masters), 595 N.W2d 832 (Mich. 1999) affords it no assistance for two reasons. First, the facts of that arson case are different from those in this case. In Masters, the insured and his son intentionally set fire to their own clothing store so as to destroy inventory and collect the insurance proceeds. Id. at 835. Here, Gundrum is not a participant in anything similar to an insurance scam. The majority errs in making such a comparison.
Second, the majority does not capture the Masters court's complete analysis. It reasoned that "[o]f course, 'an insured need not act unintentionally' in order for the act to constitute an 'accident' and therefore an 'occurrence.'" Id. at 838-39. To illustrate its analytical framework, it gave an example of a fire that was started by a faulty electric cord on a coffeemaker owned by the insured. Id. at 839 (quotation omitted). It stated that "there is no doubt that [the insured] purposely plugged in the coffeemaker and turned on the switch," and acted "inten *582 tionally." Id. (quotation omitted.) Nevertheless, "[t]he fire remains an accident and the act constitutes an occurrence... because at the time of the insured's purposeful act he had no intent to cause harm. The act of plugging in the coffeepot is not a sufficiently direct cause of the harm, and the fire in this example is an accident." Id. (quotation omitted.)
Thus, Masters not only does not help the majority, it undermines the analysis. Masters counsels in favor of finding an "occurrence" in this case. Gundrum is not like the insured that intentionally set a fire hoping to cause damage and thereby collect insurance proceeds. Instead he is like the insured who plugged in a faulty coffeepot — he had no intent to cause harm, and the assault is an accident from his standpoint. Id.

 There is no liquor liability exclusion in the Gundrums' policy. Likewise, no one argues that an exclusion precluding coverage for intentional acts applies.

 In interpreting a non-insured location exclusion, the Newhouse court relied upon Wisconsin's "policy of strictly interpreting exclusionary clauses." 145 Wis. 2d at 242. It observed that "if the [insurance] company had intended to geographically limit coverage for tortious personal conduct, 'it could simply have provided that the exclusion ran to an accident 'occurring on' other owned premises.'" Id. (quotation omitted).